***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser, and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with minor modifications.
 *********** EVIDENTIARY RULING
All objections raised by counsel at the hearing and at the depositions are ruled upon in accordance with the applicable provisions of law and in accordance with this Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement, which was admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. Plaintiff-employee is Mr. Harold E. Lawrence and defendant-employer is Brevard Electric Company.
2. At all relevant times, Comptrust AGC has been the carrier on the risk, and Brentwood Services Administrators has been the servicing agent.
3. Defendant-employer regularly employs three or more persons, and the parties are subject to and bound by the provisions of the North Carolina Worker's Compensation Act.
4. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer to his back on 18 December 1997.
5. Plaintiff's average weekly wage on 18 December 1997 was $776.23 which yields the maximum compensation rate for 1997 of $512.00.
6. Defendants agreed to pay, and plaintiff agreed to accept, $27,703.98 in unpaid benefits immediately post hearing, once an order was entered by the undersigned with respect to attorney fees.
7. Additionally, defendants agreed to pay plaintiff $224.24 per week in temporary partial disability compensation, subject to any attorney's fee approved, from the date of the hearing until plaintiff's entitlement to such benefits is exhausted or until the Commission otherwise orders. It was understood that plaintiff accepted said benefits without prejudice to his right to seek total disability benefits pursuant to G.S. § 97-29
rather than the partial disability benefits pursuant to G.S. § 97-30
voluntarily tendered by defendants.
8. It was agreed that defendants are entitled to a credit for any of the benefits voluntarily paid pursuant to Stipulations (6) and (7) against any indemnity benefits subsequently awarded by the Commission.
9. If in the course of the hearing, discovery or depositions, the parties found additional medical records that had not been previously discovered and produced, the parties agreed to stipulate them into the record subject to their right to depose any health care providers whose records suddenly emerged and appeared particularly germane.
10. Following his admittedly compensable injury by accident, plaintiff was totally disabled from 18 December 1997 to 23 March 1998, and from 4 April 1998 to 1 January 1999, and was partially disabled from 12 January 1999 to approximately 20 November 2000.
11. The issues to be determined are whether plaintiff is disabled as the result of his 18 December 1997 injury by accident and, if so, to what benefits is he entitled?
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Pursuant to the parties' stipulations regarding benefits to be paid to plaintiff, on 29 August 2001, Deputy Commissioner Houser entered an order approving an twenty-five percent (25%) attorney's fee for counsel for plaintiff. Plaintiff received a copy of the Order on 6 September 2001, but did not receive benefits until after 18 December 2001. At that time, defendants paid a total of $31,740.30 in benefits, out of which plaintiff received $23,805.22, with counsel for plaintiff receiving $7,935.08. In addition, at that time, defendants began making the agreed upon payments of $224.00 per week in temporary partial disability benefits to plaintiff.
2. As of the date of the hearing before Deputy Commissioner Houser, plaintiff was 56 years old, with his date of birth being 13 November 1944. Plaintiff attended high school through the ninth grade and then went into the military. Plaintiff received his GED after he completed his military service. Thereafter, attended night school for four years to be certified as an electrician. Since completing his education, he has worked as an electrician, electrician foreman, and as an electrician supervisor for the past 34 years.
3. From 1987 until November 2000, plaintiff worked as an electrician supervisor for defendant-employer. In that capacity, plaintiff supervised up to twenty workers and performed the various tasks required of an electrician. His duties as an electrician required him to work with his tool belt on, and involved medium to heavy repetitive lifting, working in tight spaces, climbing ladders, digging ditches and pulling wire.
4. On 18 April 1994, plaintiff sustained a low back injury at home while lifting a refrigerator with a number of other individuals. Diagnostic studies revealed the presence of degenerative disc disease in plaintiff's spine. Plaintiff recovered from this injury without any permanent impairment and was able to return to his normal work duties with defendant-employer.
5. On 18 December 1997, plaintiff sustained an admittedly compensable injury by accident to his low back while breaking up concrete with a sledge hammer. Following this incident, plaintiff was admitted to St. Joseph's Hospital, where he was treated by Dr. Daniel Eglinton. At that time, plaintiff was experiencing significant back pain, for which an epidural injection was ordered, and Dr. Eglinton opined that plaintiff may have sustained a disc injury. Plaintiff remained hospitalized through 22 December 1997.
6. Following his hospitalization, plaintiff was treated conservatively by Dr. Eglinton, and received pain medication. However, because plaintiff's pain persisted, Dr. Eglinton ordered a discogram to determine whether there was damage to a disc. On 24 February 1998, the discogram was performed, the results of which were normal.
7. By 23 March 1998, plaintiff had experienced some relief from his back pain, and he was able to return to light duty, full time work with defendant-employer. Following his return to work, plaintiff's pain gradually began to worsen, and on 3 April 1998 he was referred by Dr. Eglinton to Dr. Stewart Harley a spine specialist. Due to these symptoms, plaintiff again went out of work on 4 April 1998. Dr. Harley first examined plaintiff on 6 April 1998, and eventually diagnosed plaintiff was having a disk space infection, or discitis, secondary to the discogram procedure performed on 24 February 1998.
8. On 15 April 1998, plaintiff began receiving treatments for his disc infection from Dr. William McKenna, a specialist in infectious diseases. Dr. McKenna began intravenous antibiotic therapy for plaintiff's infection, which eventually resulted in a reduction of plaintiff's low back pain. However, this treatment also caused blood clots in plaintiff's arms for which he was prescribed Coumadin to thin his blood.
9. The disc space infection, or discitis, contracted by plaintiff was a direct and natural result of and was causally related to the discogram performed on 24 February 1998, which in turn was necessitated by plaintiff's 18 December 1997 injury by accident.
10. As the result of his disc infection, plaintiff was unable to work from 4 April 1998 to 12 January 1999. On that date, he returned to work for defendant-employer in a modified position supervising two workers at a construction site. Plaintiff continued to work for defendant-employer through 20 November 2000, when he resigned and retired from his position due to recurring back pain. Plaintiff has not returned to work for defendant-employer or any other employer since that date. Although there has been improvement in plaintiff's back pain since the infection was controlled, the level of pain he experiences has not returned to the level it was prior to the infection becoming symptomatic. During this period in which plaintiff was able to perform modified duties for defendant-employer, he worked between thirty-two and forty (32-40) hours per week. Plaintiff's duties during this period included reading blueprints, assigning workers to jobs, dealing with contractors and answering questions.
11. On 6 January 2000, an MRI was performed which indicated degenerative loss of disc height and signal at the L1-2 level, degenerative changes and annular bulging at the L2-3 and L3-4 levels, a degenerative changes and slight bulging at the L4-5 level and degenerative changes at the L5-S1 level with plate irregularity and signal change.
12. On 20 July 2000, plaintiff returned to Dr. Harley with complaints of severe back pain which was radiating into his left leg following periods when he was on his feet for an extended amount of time. Plaintiff's complaints of experiencing severe back pain upon any sustained activity are accepted as credible by the undersigned. Dr. Harley noted that plaintiff needed to protect his back, do back exercises, and wear a corset as needed. Further, Dr. Harley assigned permanent restrictions of lifting no more than ten to fifteen (10-15) pounds and infrequent bending, and opined that plaintiff had reached maximum medical improvement and assigned a twenty-percent (20%) permanent partial disability rating to his back. Regarding plaintiff's application for Social Security disability, on 16 November 2000, Dr. Harley indicated his support for plaintiff's withdrawal from the active workforce due to the recurrence of severe pain plaintiff experiences when he attempts any type of sustained activity. Dr. Harley further noted that in his opinion, plaintiff should be considered disabled from any type of heavy strenuous work due to his back condition.
13. On 22 November 2000, plaintiff underwent an independent medical evaluation by Dr. Mark Roy, a neurosurgeon. Following this evaluation, Dr. Roy opined that in his present condition, it was not feasible for plaintiff to work. However, Dr. Roy recommended that plaintiff undergo a fusion surgery after which, Dr. Roy opined, plaintiff should have an improved, but still limited ability to lift and bend. On the issue of possible treatments for plaintiff's back, Dr. McKenna has opined that there was no contraindication to additional surgery as a result of the disc space infection, and that plaintiff could have a back fusion with a reasonable expectation of a good result.
14. The totality of the credible evidence of record, particularly the medical opinions that plaintiff's condition would improve through surgery, supports a finding that plaintiff may be capable of returning to some type of gainful employment. Accordingly, based upon his age, education, work history and condition, the undersigned finds that plaintiff is not totally disabled on a permanent basis.
15. As a result of his 18 December 1997 injury by accident, plaintiff has been unable to earn wages in his former position with defendant-employer or in any other employment for the period of 20 November 2000 through the present and continuing.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 18 December 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). The disc space infection, or discitis, contracted by plaintiff was a direct and natural result of and was causally related to the discogram performed on 24 February 1998, which in turn was necessitated by plaintiff's 18 December 1997 injury by accident. Id.
2. Based upon his age, education, work history and condition, the undersigned finds that plaintiff is not permanently and totally disabled. N.C. Gen. Stat. § 97-29.
3. As the result of his 18 December 1997 injury by accident, plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate of $512.00 per week, for the period of 20 November 2000 through the present and continuing until he returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. As the result of his 18 December 1997 injury by accident, plaintiff is entitled have defendants pay for all related medical expenses incurred or to be incurred. N.C. Gen. Stat. § 97-25; N.C. Gen. Stat. §97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $512.00 per week, for the period of 20 November 2000 through the present and continuing until he returns to work or until further order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein and to the credit in defendants favor for benefits already paid.
2. Defendants are entitled to a credit against the compensation awarded herein for benefits paid pursuant to the agreements reached by the parties at the hearing.
3. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his 12 December 1997 injury by accident related complications.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
5. Defendant shall pay the costs.
This 1st day of August 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER